and we'll turn to Raj B. Thackurdeen v. Duke University, the Organization for Tropical Studies. Go ahead, Ms. Glandian. Good morning, Your Honors. May it please the Court. My name is Tina Glandian. I'm from Garrigus and Garrigus and I represent appellants Rosney and Raj Thackurdeen. This case arises from the very tragic and untimely death caused by the drowning in Costa Rica of their 19-year-old son, Robby Thackurdeen, who at the time of his death was participating in a 15-week study abroad program through Duke's Organization for Tropical Studies study abroad program. Right prior to the program being finished and him returning home, the program surprised the group with a last-minute unannounced trip that was not in the itinerary to Playa Tortuga, which was a very known dangerous region of Costa Rica, known for its dangerous rip currents and as a result, without proper warning, supervision, unfortunately, Robby Thackurdeen drowned in the sea that day. And if you had jurisdiction, personal jurisdiction over the defendants, you'd have a strong case. We're looking at the legal question. Yes, Your Honor. This is a tragedy, of course. Of course. A tragedy for the plaintiff's parents. So, could you tell us, what is your strongest argument for personal jurisdiction here? Well, we think the Thackurdeens were, not only, we believe there's a basis for general jurisdiction, but I think probably the strongest argument is for specific jurisdiction under the facts of this case, where not only does Duke, I know the district court talked about this not being an extraordinary case and relied on the fact that national universities in general should not be hailed into court in all 50 states just because they market and recruit students from all states in the nation. We think this case is different because this... Maybe that's the reason for getting jurisdiction over them. Yes, Your Honor. And we think general jurisdiction, to begin with, we think is appropriate because New York is an admissions state for... Well, it's very hard to draw the lines on the amount of admissions. I mean, if it's 10 students in a particular case or 1,000 students from a particular jurisdiction, where do you draw the line? That's why I wanted to focus on your strongest case. I mean, are you saying that somehow this tort had injurious effect in New York? Absolutely, Your Honor. But don't the cases really say that that's where the effect is felt primarily where the tort occurs? Well, it depends. I think we fall under various provisions of the CPLR section 302. We think not only did they initially market and recruit and directly send mailings to the faculties at their New York address, and the contract for the program was executed in New York. Robbie had to... They had instructed that he get vaccinations, all of which prior to the program took place in New York. And we do think, although the court didn't give us an opportunity here to amend, there certainly were enough facts alleged that there could be claims for fraud and inducement and breach of contract because they did represent... participate in the program. They needed parental consent, which Raj Thackerty signed in New York. And he did so on the basis that they represented that this was a particularly safe program, that there would be the ratio between faculty and staff during the program was very low so that all students would be highly monitored, that everything was going to be safe, and that they had taken safety measures to protect the students, which obviously in this case proved to be false. And again, there are certain allegations that they knew and had done things in the past, but our position is that they certainly misrepresented these things in getting the Thackerty's to enter into this contract in the first place in New York. Furthermore, a lot of the... Even though the conduct itself occurred in Costa Rica, they... One of the claims, as the court knows, is the intentional infliction of emotional distress, which occurred when they had called the Thackerty's and misrepresented the fact that their son had gone... Had drowned at that point. And they initially said that he was just missing. And after... And there was various phone calls in which they didn't tell him the truth about what was actually happening in Costa Rica. The Thackerty's, obviously in an abundance of caution and very concerned for their son, immediately went to the airport and... Is your view that that call constituted tortious conduct in New York? The call, as well as the fact that when they were at the airport, they saw an article in Spanish with a body bag, and they didn't know what this was. And they asked somebody at the airport to translate, and they found out that this was about a drowning in Costa Rica. Mrs. Thackerty, again, reached out to the representative there who assured her that he's no longer missing, everything is fine. And so they were in obvious severe emotional distress from the initial phone call letting them know that their son is missing and leading up to this whole incident at the airport in which they saw this body bag, it's a foreign article, weren't sure what to make of it, were getting conflicting information. Arrived in Costa Rica, again, things were... Haven't we said that a defendant's physical presence in New York is a prerequisite to jurisdiction? I believe there's conflicting authority on that. I think the case law says that although physical presence has been broadly interpreted to say that if there's phone calls or mailings and certain things that are received in New York, that that can be deemed sufficient for physical presence, that that's not... It doesn't actually have to be that the defendant himself or whoever the entity is has to be physically present. Well, haven't we said it as a court in the Second Circuit? I think the Second Circuit has... Are you telling me that we're all over the map on that issue? I think it's a little bit unclear. I think there's... Part of the reason for the lack of clarity is not this particular fact pattern but the use of the Internet and the fact that the Internet is felt everywhere and messages go out to every jurisdiction. And I think the distinction there is that here they were directed to New York. I agree that if it's something that's posted on the Internet that somebody sees when they're in New York phone number or sending a mailing to New York and knowing that somebody is in a particular state at the time that they're directing the conduct. Again, I think it's very broad if it was, if they had no knowledge of where they're calling or if this was like the cases on the Internet or something that could be seen anywhere. And to echo Judge Walker's initial statement, this is a very tragic case, but the only question before us, as you know, is whether personal jurisdiction exists in New York. I think in the event that if the court... Again, our position was that this, you know, the parties had requested oral argument. We had anticipated that this would be heard by the court. Certainly at that time, if the court was inclined to dismiss the case, we would have asked for one, leave to amend to allege additional claims that we think, contractual claims that we could have brought in New York. If we disagree with you, then what? What are your options? Then we would request transfer. And, you know, at this point, obviously the family has, you know, there was claims in Apelli's paperwork that there was forum shopping and that this was a tactical decision. That was absolutely not the case. Again, this is a grieving family that resides in New York, in good faith belief that these claims should be  But if the court disagrees, they're at a severe prejudice if this case is just dismissed without transfer, whereas Apelli's have been on notice of these claims since they were originally timely brought. There's absolutely no prejudice to them. They've all conceded that the appropriate place where the court has general jurisdiction over both entities is North Carolina, that that's the most convenient for them. And as we laid out in our paperwork, it would be judicially inefficient not to transfer the case because they will seek to refile this case in North Carolina. Clearly, Apelli's will argue that, you know, it's time barred at this point. North Carolina law does follow equitable tolling. And under the law, under the equitable tolling as applied by the Fourth Circuit, we have made a prima facie showing that this case should be equitably told where they did timely and in good faith and with diligence pursue their claims. There's no prejudice to the defendants whatsoever. And there would be a severe prejudice to them if the claim was dismissed. So we think in the interest of justice and in order to provide for judicial efficiency, if the court is inclined to affirm the lower court's ruling, then the court should either order, remand the case for transfer or at least at the very minimum, remand the case and ask the lower court to make that determination, which the court didn't. Thanks very much. Thank you, Your Honor. You've reserved some time. We'll hear from Mr. Cooney and then Mr. Phillips. Thank you, Your Honor. My name is Jim Cooney. I'm a member of the Bar of the State of North Carolina, and I represent Duke University located in Durham, North Carolina. I do have to agree with Ms. Glandy, and this is a tragic case. I think the facts would be hotly contested once the issues are joined, but there's no question it's a tragic case, and sometimes tragic cases can drive thinking. But in this case, the law is clear. You would have no objection to our transferring the case to the middle district of North Carolina? I think that's within the court's discretion as to whether that serves the interest of justice. Let's address that issue. Well, the courts, there are good courts in North Carolina, federal courts in North Carolina. Yes, Your Honor, and I want to be on the record saying that, too, when it gets back to North Carolina. Why don't you address that issue? Justice is not lacking in North Carolina. About the interest of justice, why it would or would not be. Presumably your argument is that it wouldn't be in the interest of justice. Why would it not be in the interest of justice? Because it encourages form shopping, Your Honor. There was a deliberate decision made. This was not a complaint filed in court. It would cure form shopping. Well, no, it wouldn't. It would reward form shopping. How so? Because it would say to plaintiffs, you may file anywhere you want to in the country on the slimmest of jurisdictional notions. And if you're wrong, don't worry about it. We'll just transfer it back to where you should have filed to begin with. So that's exactly what happened here. There were extensive discussions with the plaintiffs. This lawsuit did not come out of the blue. Even Ms. Thacker Dean's declaration talks about an investigation with Duke, and there were numerous discussions. Of course, prospectively, we issued something that talked about national universities like Duke and said that there was clearly, based on the factors that were described by the Plaintiffs' Council, that those were not enough for personal jurisdiction in New York. Then any subsequent action that was similar to try to drag in Duke or Stanford or whatever it is might be deemed to be frivolous. So that would have a determined effect. I don't think so. But then you could, in this case, transfer it. It's so fact-specific, and I think that's part of it. But the only jurisdictional nexus here was the fact that they lived here. And I think it's important because the plaintiff keeps conflating the causes of action. We've got two different torts here. One is Robbie Death's claim in Costa Rica. There is no theory under which there was any act that had any effect in New York stemming from his death. All of the acts, according to the complaint, took place in Costa Rica, allegedly overseen by two institutions in North Carolina. There was no connection whatsoever to his death. It didn't arise out of the contract. Let's assume for the argument, and it's only a hypothetical question, that we exercise our informed discretion to transfer this to your favorite district in North Carolina. Would you then acquiesce in the jurisdiction of that court? Or do you have a view on whether that court would have jurisdiction? Or would you then raise the question of choice of law that somehow, it's a kind of choice of law question, that the proper venue or the convenient forum is Costa Rica? Well, there might be a venue question, and we'd have to explore that once we got down there. There's no question that defendants are liable to be sued where they're found. And Duke is found liable to be sued in North Carolina. You've already acknowledged that there's jurisdiction in North Carolina? Sure. Okay. And I'm sure my colleague for OTS will acknowledge the same for his organization. And there's no forum nonconvenience concern? No. Okay, so all right. But I do think you need to think long and hard about permitting this kind of a transfer when they've made no motion. They never brought it up before the district court. They made an informed decision to sue in one place rather than another. If they had sued in the middle district of North Carolina, we'd be two years into the case and be done with discovery and getting ready to trial, or at least. What is your view of the status of this case if it were, in fact, affirmed substantially for the reasons stated by Judge Nathan? The result is it's. Would a new action in the middle district of North Carolina be timely in your view? I think it's an open question on both transfer and dismissal, quite frankly, because North Carolina is a different state. The jurisdictional document in North Carolina is service of a summons. So if you file a complaint and a summons is issued and the summons is not served or incorrectly served, as it would have been in this case because there was no personal jurisdiction, and the summons lapses, North Carolina law in general is tolling stops. And therefore, the statute of limitations continues to run. Now, the federal courts, in analyzing that, and she's correct, take into account the doctrine of equitable tolling. But the equitable tolling is going to apply whether you dismiss or transfer, if that's applicable. So I don't know that transfer saves this case any more than outright dismissal. But I do think transfer expresses a judicial policy that you ought to get it right and sue defendants where they are. And we were clearly in the middle district of North Carolina. They knew it. There was no mystery about that. And this was not something done at the last minute to beat the statute of limitations. All right. Let's hear from Mr. Phillips. Thank you. My name is Reed Phillips. I'm from Greensboro, North Carolina, and I represent the Organization for Tropical Studies. Also in the middle district, are you? It is in the middle district. Durham, North Carolina. Just down the road. No one asked for a transfer of this case to the district court. And the standard that you have for reviewing the decision of the district court is abuse of discretion. And so, as the question was posed in the Cosmochrome case that we cited, how can you find that the district court judge abused a discretion that she was never asked to exercise? I think it's unfair to the district court to say that she did something wrong when she didn't do something that nobody ever asked for. Well, that's not unheard of. We do that all the time. Okay. But usually the error is plain. It's a Northeast thing. But, again, nobody asked for the transfer there, even after we filed the motion to dismiss, saying there was no personal jurisdiction. At that point, we should have come in and at least in the alternative said, well, if that's the case, then, you know, let's transfer the case. So that's point number one. Point number two that goes with that, as a consequence of that, Judge Nathan never had the opportunity to consider the arguments of counsel and the points that people might make about whether this was in the interest, would be in the interest of justice to transfer the case. I think she deserved that opportunity. So you're suggesting that rather than do it, if we were inclined in this direction, rather than do it ourselves, we should send it back to the district court. I understand you can do it. But, yes, I think that's one of the options that your adversary proposed, remand and let Judge Nathan do it. If the court believes that the transfer issue should be addressed, then I think it should go back to the district court so that the arguments can be made and briefed before the district court on whether that is in the interest of justice. Yes, Your Honor. Because, after all, as I said, they, in effect, they waived that argument at the district court. They didn't raise that argument at the district court. I think fairness to the parties requires that everybody have that opportunity to address that question if the court is so inclined. And keep in mind, as Mr. Cooney said, that all of the hardship up to this point has been on us. We've had to come to a state where we are not at home and where we say there is no jurisdiction and incur the cost of contesting jurisdiction up here. So there has been a burden and a harm on the defendants up to this point. And then, finally, as Mr. Cooney alluded and I agree, there is sort of an integrity and are the rules going to mean what they say? Rule 12 says you dismiss cases when there isn't jurisdiction. The statute allows transfer, of course, but in a case where it has not been requested and where the court has not had the opportunity to determine whether it would be in the interest of justice, I would argue and suggest that this court should not do it on its own. Thank you very much. Counsel for the plaintiff has reserved three minutes. Thank you. To address the first point that transferring this matter would encourage form shopping, I just want to remind the courts, Your Honors, that the district court did initially grant jurisdictional discovery based on the fact that plaintiffs had made a colorable claim of jurisdiction. They had opposed that on much of the same reasons that they've now argued and on which the court ultimately found. But this isn't a case that could be said that they had absolutely no basis. I know they've said that, again, have argued the fact that this was clear form shopping. Obviously, it was not. And if that were the case in the face of their opposition to the motion for jurisdictional discovery, I don't believe the district court would have granted jurisdictional discovery, finding that there was, in fact, a colorable claim. As far as Counsel's second point about the two different causes of action here, saying only the intentional infliction of emotional distress cause of action arose from anything that occurred in the state of New York, I also think that the wrongful death action and the survival claims do arise from conduct in New York. Because, again, they had to induce the parents to enter into the contract, which is the basis of the negligence claim, is that there was a duty owed in light of the relationship that was formed in New York. If that contract was not entered into and there was no relationship formed in New York, there would be no duty owed by Duke or OTS to Robbie or his parents. As far as the service argument that if this case was transferred to North Carolina, there would be a service issue, we addressed that in our papers, and specifically that Rule M of the Federal Rules of Civil Procedure allows the court to extend time or, on its own motion, give more time for service. And we cited cases from the North Carolina court and from the Fourth Circuit in which that's precisely what's happened. And even after the case has been transferred, they've given up to— I know in one case they hadn't reserved the complaint for over 178 days and the court still extended time, finding that there was no prejudice and it was in the interest of justice to do so. As far as a few of the points that counsel for OTS raised, I know they've several times mentioned that nobody in the district court had requested transfer. As counsel later conceded, they did in the alternative. It's true that plaintiffs had not requested it, and again, it was our position that this case would be orally argued, and that's something that we could have raised at that time if the court was not inclined to grant us leave. But so this was before the court, and in its ruling, the court specifically said that because of the fact that the court is dismissing the case, she did not rule on the transfer issue. She did refer to it specifically? Exactly, yes, Your Honor. Are you claiming an abuse of discretion, or is it simply that we have discretion to do it? Well, we're arguing both. We think under the facts of this case where they conceded the general jurisdiction in North Carolina, that the court had general jurisdiction over both of them, clearly this was timely filed, and in light of the totality of the circumstances, we think the court plainly should have, and the transfer issue was before the court in the form of alternate relief. We think the court abused its discretion in not considering whether it would promote the interests of justice. When you say the transfer issue was before Judge Nathan, how was it before? So OTS, when they opposed plaintiffs, I'm sorry, in their motion to dismiss, they had said if the court is not inclined to dismiss, the action should be transferred to the middle district. So it came up from the other side? Yes, it came up from the other side, and so we thought at that point it is before the court. It is in the record? It is in the record, and it's in our briefing, and we reference the courts. In light of this conversation, perhaps Mr. Cooney would give us the benefit of 60 seconds, but your time is up. If I could just add one last thing, Your Honor. Please. I can represent the family. Again, if this matter is, I know that they said that the court should not, if the court is inclined to transfer the case, the court should not directly transfer and should remand the matter. Whichever approach the court takes, I know they said it's been unfair because they've already had to litigate this. It is our position that we will, if the case is not, if it's either remanded and the court refuses to transfer, we will still be refiling in North Carolina. So, again, I do think it's in the interest of judicial efficiency for the court to do it in the first instance now as opposed to remand and have further proceedings in order for us to do that. Okay. We've got the art. Thank you, Your Honor. Or Mr. Fletcher, whoever. Yeah. My colleague is looking at the record references. If you look at both the motions that were filed, both the motions that were filed asked for dismissal pursuant to Rule 12b-2 for lack of personal jurisdiction and for improper vending, both by Duke and by OTS. Now, along the way in a pleading, a footnote was dropped that mentioned they could request transfer if they chose. But that was not in the motion. That was in, I believe that was in a brief filed by OTS. But no party asked for transfer, not the defendants nor the plaintiffs. Thanks very much. We reserve the decision and we are adjourned. Court is adjourned.